IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| vs. ) | CRIMINAL NO. 04-00031-CG |
| ) | |
| GARY A. GEORGE, ) | CIVIL NO. 06-0502-CG |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Gary George has filed a Motion to Vacate, Set Aside or Correct Sentence (Doc. 267). He raises the following claims: (1) that the court erred in counting his 1998 conviction for "solicitation to sell" as a qualifying prior drug offense for application of the career offender provision of §4B1.1 of the U.S. Sentencing Guidelines; (2) that defendant's plea agreement was coerced and not voluntary in that his attorney, the probation officer and the Assistant United States Attorney all assured him prior to signing that document that the career offender provision was not applicable to his case and would not be pursued by the government; and (3) ineffective assistance of counsel in several respects.

Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." U.S. v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. U.S., 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims,

but not to duplicate hearings. The appellate process does not permit reruns." Moore v. U.S., 598 F.2d 439, 441 (5th Cir. 1979)[1].

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998)(citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990); see also Lynn v. U.S., 365 F.3d 1225, 1234 (11th Cir. 2004).

One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel. Cross, 893 F.2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Id. However, "[c]onclusory allegations of ineffective assistance are insufficient." Wilson v. U.S., 962 F.2d 996, 998 (11th Cir. 1992)(quoting U.S. v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2

A petitioner can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule." or that he received ineffective assistance of counsel with regard to that claim. Murray v. Carrier, 477 U.S. 478, 488 (1986).  An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ...  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial... worked adequately.  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 113 F.3d 384, 386 (11th Cir. 1994)(internal quotations and citations omitted).

## Factual Background

On February 29, 2004, defendant was charged in a superseding indictment with conspiracy to possess with intent to distribute more than 50 grams of methamphetamine and possession with intent to distribute 11.6 grams of methamphetamine.  There was also a forfeiture count. On May 25, 2004, defendant entered into a plea agreement and pled guilty to Count One. The plea agreement contained a provision waiving his right to appeal or collaterally attack his sentence except on certain grounds: an upward departure from the sentencing Guideline range, a sentence in excess of the statutory maximum, and claims of ineffective assistance of his trial counsel, Paul Brown.

3

Defendant asserts that he and the government had previously entered into a slightly different plea agreement but that his attorney told him that he had to sign the new agreement. The court's docket contains an entry on May 10, 2004, setting a date for a change of plea hearing for the defendant. See Doc. 131. According to defendant, he had originally signed an agreement with the government which stated that he sold a mixture of "ice" and actual methamphetamine. He further states that, on the day of the change of plea hearing, his attorney brought him a different plea agreement which changed the description of the drugs to read "ice or actual" which defendant asserts increased the likely sentencing range.[2] Defendant originally declined to sign the modified agreement because he claimed that he did not ever sell methamphetamine in just the "ice" form. He states that his attorney left to discuss the issue with ASA Bedwell and, on his return, told defendant to just sign the new agreement, that the government wanted the plea to include methamphetamine in the ice form so that the other people [presumably his co-conspirators] could be indicted for that form of the drug, and that the discrepancy would be straightened out at sentencing.

Prior to entering into the plea agreement, defendant attended a probation office conference at which defendant's attorney, Probation Officer Bea Jones, and Assistant U.S. Attorney Gloria Bedwell, were present. At this meeting, defendant was advised about the possible guideline sentence that he faced. Defendant alleges that, at this meeting, his attorney asked whether there was any issue concerning application of the career offender provision of the

___

[2]At the probation office conference, the defendant was advised that the projected range of imprisonment was between 151 and 188 months. See sentencing transcript, Doc. 254 at 4 (representation by defendant's counsel). There is no indication in the record of a higher range in light of the alleged change in the plea agreement.

sentencing guidelines. Defendant asserts that both the probation officer and ASA Bedwell assured him that the career offender provision was not applicable to his case.[3] However, the Presentence Investigation Report (PSR), which issued later, applied the career offender provision.

Defendant's attorney filed a written objection to that aspect of the PSR, and argued the issue at sentencing. At the sentencing hearing, he acknowledged that (a) there was no requirement of notice of the career offender enhancement and (b) that the probation office determination at the probation conference was not binding on that office or the court. However, counsel argued that his failure to seek an exception in the appeal waiver for raising this issue made this situation a potential due process issue.

The court conducted the defendant's sentencing hearing on August 11, 2005. After hearing argument from defendant's counsel and the government, the court found that defendant's prior conviction for solicitation was an appropriate predicate act for application of the career offender provision. The court found defendant's total offense level to be 34 and his criminal history category to be 6. The United States had filed a motion for downward departure based on the defendant's substantial assistance in other prosecutions. The government recommended that defendant's sentence be reduced by 25% from the low end of the sentencing guideline range as determined by the court. The court found that a downward departure of 50% was appropriate. The court sentenced defendant to a term of 131 months imprisonment, to be followed by a term

---

[3] At the sentencing hearing, defendant's attorney stated that there was no indication at the probation conference that the career offender provision would apply and that he had thereafter contacted Bea Jones again to make sure that it was not applicable. He stated further that he had received her assurance that the provision was not applicable to Mr. George.

5

of supervised release of five years, and a special assessment of $100.

Defendant filed a timely notice of appeal. On February 28, 2006, the Court of Appeals dismissed the appeal without opinion on the grounds of the execution of a valid appeal waiver.

Analysis

Court Error

Defendant's first claim is that the court erred in finding the career offender provision applicable to him. This matter was raised before at sentencing and on direct appeal. The Court of Appeals dismissed the appeal, finding the issue barred by the defendant's waiver in his plea agreement. The plea agreement contains a similar waiver of the right to collaterally attack the sentence. As the Court of Appeals implicitly ruled, none of the three express exceptions contained in the waiver provision applies. The Eleventh Circuit's decision, finding the arguments raised were precluded under the waiver provision applies with equal force to this collateral attack pursuant to §2255. Defendant's first claim, alleging court error, is **DENIED.**

Coerced Plea

Defendant's second claim is that his guilty plea was not knowingly and voluntarily made, as he was "coerced" by receiving false information from his trial attorney, the prosecutor and the probation officer concerning a material matter: the applicability of §4B1.1 of the Sentencing Guidelines (the career offender provision), which could effectively double his sentence.[4] In

---

[4] The government asserts that the order dismissing defendant's appeal implicitly includes a finding that the plea was knowing and voluntary. The record before the court does not indicate that the issue was raised on appeal or that it was necessarily considered by the Court of Appeals in dismissing the appeal. Further, as discussed below, defendant's claim is predicated on a claim of ineffective assistance of counsel, a claim generally addressed on collateral review rather than on direct appeal. See. Massaro v. U.S., 538 U.S. 500, 508-09 (2003).

McMann v. Richardson, 397 U.S. 759, 771 (1970), the Supreme Court held that, in asserting that a plea was involuntary due to ineffective assistance of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann..'" Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  Defendant has also raised an ineffective assistance of counsel claim concerning this issue.  The merits of that claim are considered here in that context.

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  U.S. v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).  Rule 11, Federal Rules of Criminal Procedure, explicitly directs the district judge not to accept a plea without determining that these conditions are satisfied.  The court thus placed defendant under oath and asked a series of questions designed to assure each of those factors.

Concerning his understanding of the charges, defendant testified that he had read the charges against him, had discussed them with his attorney, and that he understood them.[5]  With regard to his understanding the consequences of the plea, he testified that he had an opportunity to read and discuss the plea agreement with his attorney before he signed it and that he understood the plea agreement; further, that he understood that the plea agreement was merely a recommendation which the court could reject without allowing him to withdraw his plea, and

---

[5] All references to the plea colloquy are to the transcript, Doc. 253.

that the sentence could be more severe than he anticipated. The defendant testified that he understood that the court could impose a sentence of a minimum 10 years to a maximum of life imprisonment, plus up to $4 million in fines, and a five-year term of supervised release; that he would be waiving certain other constitutional rights and would lose other rights as a result of his conviction of a felony and drug offense; that his attorney had discussed the application of the Sentencing Guidelines with him, and that he understood that no firm calculation of the Guidelines was available at the time of his guilty plea; that the court could depart either up or down from the Guideline range, once calculated; that his agreement contained a waiver of the right to appeal with certain limited exception; and that he understood he was waiving his right to raise any other grounds for appeal.

Much of that discussion also impacts defendant's claim of coercion. In addition, defendant also testified that there were no agreements with the government outside the written agreement;[6] that no one had made any other or different promises or assurances of any kind in an effort to induce him to plead guilty; and that no one had attempted to force him to plead guilty.

Defendant now claims that he intentionally did not tell the court about the statements

---

[6] The court noted that the defendant hesitated in giving this answer, and asked if there were something else that defendant was thinking of.
  THE DEFENDANT: No
  THE COURT: No?
  THE DEFENDANT: I'm okay.
  THE COURT: Okay
  MR. BROWN: Well. It incorporates the fact that we're cooperating, so I think that may be what –
  THE DEFENDANT: Yeah.
Doc. 253 at 5.
  The court then proceeded to make sure that the defendant understood that the plea agreement did not bind the government to do anything with regard to asking for a reduced sentence unless there was substantial assistance.

made at the probation office conference concerning the applicability of the career offender provision of the Guidelines.  In this Circuit, courts

> apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

U.S. v. Cardenas, 230 Fed.Appx. 933, 936 (11th Cir. 2007).

In Cardenas, the Eleventh Circuit held that, in the face of questions and sworn answers at the plea hearing that defendant knew that any estimate of the likely range of sentence he would receive could be ignored by the court, which could impose a sentence up to and including the maximum allowed under the statute, any subsequent claim to have misunderstood that was not credible. Id. at 935-36.

Defendant George states by way of explanation that his attorney had informed him that he couldn't mention an agreement with the government.  Despite defendant's attempt to use this discussion to explain his failure to mention the government's alleged assurance that the career offender provision would not apply, it is clear from his description that the discussion concerned a different matter.

> When petitioner and petitioners Attorney were discussing the plea agreement ... petitioner brought up the fact ... that there "was' an agreement with the government ... for downward departure.  Mr. Brown advised me that we couldn't mention an Agreement . . .in case I had to testify at trial . . . that . . . if the defense Attorney Asked me if any Deals were made Between myself and the government . . . that I could "truthfully" say no. –OK . . we won't call it an "Agreement" . . . we'll call it an "understanding" Paul Brown told me to 'trust' the government.  If they tell me they will Do something . . . they will.  Mr. Brown Reminded me that I was 'Helping' them . . . that they aren't gonna Deceive me.

Doc. 276 at 3 [punctuation, including ellipses, and capitalization original].  The quoted

9

discussion plainly concerned the issue of cooperation with the government. It is also clear that defendant understood it in that light. See note 4, supra. The plea agreement contains a substantial section addressing downward departures and defendant's agreement to cooperate with the government. See Doc. 153 at 4-8. It is clear that, as to the issue of cooperation and the government's intent to seek to lower his sentence if he provided substantial assistance in other prosecutions, no other agreement had been reached, and that it would be inaccurate to refer to an "agreement" on that issue. Defendant could not reasonably have understood his attorney's instructions as set forth in his Reply to have been an instruction not to mention their discussions concerning the career offender provision of the Guidelines.

In the plea colloquy, the court asked whether there had been promises or "assurances of any kind" made in an effort to induce defendant to plead guilty. Defendant responded "no". This appears to have been accurate, despite defendant's current self-serving gloss on the discussions. As his attorney explained in argument on the issue at sentencing, the alleged statements of the probation officer and ASA Bedwell concerning the career offender provision were simply a truthful statement of their position at that time.

> MR. BROWN: Your Honor, the nature of the objection is that we're objecting to the application of the career offender enhancement in this case. With the career offender provisions statute, as we all know, there's no notice provisions of this enhancement prior to the plea. It's not like a notice provision of the 851(1) or 851(c). And in this case, prior to our entering a plea, the Court is aware that we had a probation conference. At the probation conference that was conducted by Bea Jones, there was no indication that the career offender provisions were going to be applicable. But even after the probation conference, I went back to Bea Jones and wanted to make sure that the career offender provisions were not going to be applicable. And I represent to the Court that Bea represented to me and I represented to Gary that the career offender provisions did not, in her opinion, apply.
>     I know and I have told Gary that the probation office conference determination or guesstimate was not binding, is not binding on the Court, is not

10

> binding on the probation office. And I'm not trying to say by any means that Bea Jones intended to mislead us, because I agree with her. She was of the opinion that it does not apply, and I agree with her.

Doc. 253 at 2-3.

As described by defendant and his attorney, it does not appear that the alleged representations by the prosecutor and probation officer concerning the career offender were intended as either a) a promise or assurance that the provision would not be applied, but rather as a truthful statement of their then-current understanding of the applicable law and facts, or b) an "agreement or assurance of any kind in an effort to induce [defendant] to plead guilty in this case." Id. at 4-5. In light of his testimony before being allowed to change his plea to guilty, including his statement that he understood that any prior estimates of the sentence to be imposed were not binding on the court, it is clear that, at the time he entered his guilty plea, the defendant knew that the discussions about the career offender provision were not a binding promise by any person as to the sentence he would receive. Defendant's understandable disappointment at learning that what he viewed as a small possibility of a different result coming to pass does not change that fact. Defendant's guilty plea was knowing and voluntary, and his second claim is therefore **DENIED**.

Ineffective Assistance of Counsel

Defendant next claims that his attorney was ineffective, in violation of his Sixth Amendment rights. He raises the following grounds: 1) that counsel coerced defendant on false grounds to enter the plea agreement; 2) that counsel explained the appeal waiver incorrectly; 3) that counsel assured defendant that he faced no possible sentence greater than 188 months and that he would receive a substantial downward departure of at least 50% for his cooperation with

11

the government; 4) that counsel instructed him not to inform the court of the statements at the probation office conference concerning the career offender provision; 5) that counsel assured defendant that there was not possibility of an issue with regard to the career offender provision; and 6) that counsel assumed there was no reason to take steps to bind the government to its assurance on the career offender provision.

For the reasons previously discussed in connection with his claim of coercion, defendant can not prevail on claims 1, 3, 4 and 5. The plea colloquy, in which the defendant told the court, under oath, that he understood that any estimates he had received concerning Guidelines calculations were not binding on the court, assured that his plea was knowingly and voluntarily made and that any advice given him by his attorney, or anyone else, as to the possible guideline calculations were not to be relied on. Defendant therefore can not show that he was prejudiced by counsel's advice concerning the Guidelines. Having been told by the court that the Guideline calculation may be different from what he had been advised, and electing to go forward with his plea of guilty despite that knowledge, demonstrates no prejudice. Additionally, even if the court were to find that defense counsel represented to his client that defendant would receive no less than a 50% reduction of his sentence for substantial assistance – (a questionable assumption) – the fact that the government did not do as defendant's counsel expected is insufficient. The court, in fact, applied a 50% reduction of sentence. Defendant can not show prejudice.

Defendant's claims that his attorney was ineffective by inaccurately explaining the appeal waiver and assuming that there was no need to attempt to protect against application of the career offender provision (grounds 2 and 6) require further discussion. Defendant's counsel acknowledged that he knew that representations that the career offender provision was

12

inapplicable to defendant were not binding. See Doc. 254 at 3 [quoted supra]. He further acknowledged that, had he thought that situation would change, he would have asked the government for a further exception to the appeal waiver. He did not do so.

However, under the test enunciated in Strickland v. Washington, supra, defendant must also prove that he was prejudiced by any failure of counsel. Defendant cannot show that, at the time of the guilty plea, ASA Bedwell would have agreed to enter into a plea agreement that contained an exception to allow an appeal on the issue of the career offender provision, if it applied. Nor has defendant alleged that he would not have executed the plea agreement and insisted on going to trial had his attorney made such a request and the government rejected it, or had his attorney explained that the appeal waiver provision of the plea agreement precluded appeal on issues relating to the determination of the applicable sentencing range, but allowed appeals of any sentence outside the range the court determined to apply to his case. As the Supreme Court has stated in connection with a claim of ineffective assistance of counsel in the guilty plea process, "to satisfy the 'prejudice' requirement [of Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the Strickland v. Washington test" the court declines to hold a hearing on petitioner's ineffective assistance of counsel claim. See Id. at 60. This claim is **DENIED.**

## Conclusion

As discussed above, defendant's claim that the court erred by applying the career offender provision is barred by the waiver contained in his written plea agreement. His claim

that counsel misled him into pleading guilty is without merit, and defendant has not alleged prejudice.  With regard to the claim that defendant's counsel incorrectly explained the effect of the appeal waiver, defendant has failed to demonstrate prejudice.  The remainder of defendant's claims of ineffective assistance of counsel are without merit.  Accordingly, it is hereby **ORDERED** that defendant's Motion to Vacate, Set Aside or Correct Sentence is **DENIED** without the necessity of a hearing.

    **DONE** and **ORDERED** this 27th day of July, 2009.

                                              /s/   Callie V. S. Granade
                                      CHIEF UNITED STATES DISTRICT JUDGE